UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Windham Environmental
Corporation, et al.

    v.                                            Civil No. 06-cv-367-JM

United States Fidelity
and Guaranty Company

**O R D E R**

Windham Environmental Corporation ("Windham") has filed a partial motion for summary judgment (Document no. 45).  United States Fidelity and Guaranty Company ("USF&G") has also filed a motion for summary judgment against Windham.[1] (Document no. 42)

Standard of Review

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A genuine issue is one "that properly can be resolved

---

[1] In a separate order the court will consider cross motions for summary judgment between USF&G and Mactec.

only by a finder of fact because [it] may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  A material fact is one "that might affect the outcome of the suit." Id. at 248.

In ruling on a motion for summary judgment, the court construes the evidence in the light most favorable to the nonmovant.  See Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001).  The party moving for summary judgment "bears the initial responsibility of . . . identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the burden shifts to the nonmovant to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996) (citing Celotex, 477 U.S. at 323; Anderson, 477 U.S. at 249).  Neither conclusory allegations, improbable inferences, nor unsupported speculation are sufficient to defeat summary judgment. Carroll v. Xerox Corp., 294 F.3d 231, 236-37 (1st Cir. 2002).

When parties file cross-motions for summary judgment, ordinarily the court must consider the motions separately to determine whether summary judgment may be entered under the Rule 56 standard.  Pac. Ins. Co., Ltd. v. Eaton Vance Mgmt., 369 F.3d 584, 588 (1st Cir. 2004); Bienkowski v. Northeastern Univ., 285 F.3d 138, 140 (1st Cir. 2002).  When parties submit cross motions for summary judgment in a non-jury case on stipulated or materially undisputed facts, the case is submitted and the court must determine the inferences to be drawn from those facts.  See Garcia-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 643-44 (1st Cir. 2000).

In this case, the parties submitted a Joint Statement of Agreed Facts ("J.A."), namely that the twenty-nine (29) documents filed under seal are true and correct copies of those documents. In addition, in compliance with LR 7.2, USF&G provided a Statement of Material Facts (Document no. 42-1).  Windham's objection to USF&G's motion for summary judgement (Document no. 51), and its motion for summary judgement (Document no. 45), provide neither its own Statement of Material Facts nor any opposition to USF&G's Statement of Material Facts.  Therefore "[a]ll properly supported facts set forth in ...[USF&G's] factual

statement shall be deemed admitted." LR 7.2 (G)(2).

## Background

Windham contracted as a subcontractor of Mactec "to furnish professional services in connection with the Savage Well Superfund Site." Joint Statement of Agreed Facts ("J.A.") Ex. 4.[2] The owners of the site Hitchiner and Thomas & Bette ("Hitchiner partner"), lured Mactec to assist with the design of a groundwater remediation system.  Mactec retained Windham specifically to develop, test and apply a "sequestration agent," which was a chemical formula used to prevent "iron fouling" the system's injection wells.  The underlying counterclaim against Windham asserted that Windham did not act "with professional skill and care".  J.A. Ex. 19, ¶¶ 1, 134, 136–138, 141–42, 146 and 149.  Specifically, Windham

> *did not perform with professional skill and care* when it held out the sequestration agent as being of a common type, in use at hundreds of sites, when it was custom made for this site, and experimental in nature, when it failed to insist on carrying out its recommendation for further testing of the sequestering agent, when it applied a deficient dosage of sequestering agent to the system, and when its custom blend sequestering agent could not adequately perform to avoid iron fouling in the system and out into the aquifer.

---

[2]     The precise statement of the scope of work, Attachment D, to J.A. Exhibit 4, is blank in the parties' joint filing, so the exact scope of work is not before me.

Id. ¶ 134 (emphasis added); see also id. ¶¶ 136, 141, 146, 149 (reincorporating these allegations by reference); id. ¶¶ 137-138, 142 (identical allegations). [3]

Upon start up of the remediation system in the late fall of 2004, the system failed to operate as required by the contract. The Windham-designed sequestration agent crystallized and caused significant iron fouling of both the injection wells and the surrounding aquifer formation, which it was supposed to prevent. J.A. Ex. 19, ¶¶ 47-48, 57.

In an arbitration proceeding, the Hitchiner Parties sought various damages arising out of the repair of the system. These damages as it relates to Windham included:

> the amount of money spent to re-perform work that Windham was obligated to perform under its contract with MACTEC [i.e., the Subcontract]; the amount of money paid for Windham's work which was not performed properly prior to the remedial system failure; the amount of money spent to investigate the remedial system failure; the amount spent to repair, replace, and re-design the remedial system following the failure; the incremental amounts required for additional testing, monitoring, and analysis, meetings, and communications with federal and state regulators, permitting, governmental oversight costs; additional letter of credit expense; consultant fees and expenses and all other activities and expenses incident to the failure of Windham's work ...

---

[3] The sequestration agent designed by Windham was intended to prevent iron fouling of the injection wells.

5

Id. ¶ 135 (emphasis added); id. ¶¶ 136, 141, 146 149 (reincorporating these allegations by reference); id. ¶¶ 140, 144, 148 (identical allegations).  The Hitchiner Parties alleged that to meet EPS requirements, ultimately they had to redesign and build a new water treatment system.

## Discussion

Windham maintains that USF&G owes it a defense against the Hitchiner arbitration claims and seeks partial summary judgment on that issue.  USF&G, for its part, claims that it has neither a duty to defend nor to indemnify Windham because Windham's claims are barred by the policy terms as follows:

    a.   the claims do not constitute an "Occurrence" as defined by the policy;

    b.   the professional services exclusion bans coverage;

    c.   the business risk and contractual liability exclusions bar coverage; and

    d.   the pollution exclusion bars coverage.

"It is well-settled law in New Hampshire that an insurer's obligation to defend its insured is determined by whether the cause of action against the insured alleges sufficient facts in the pleadings to bring it within the express terms of the

6

policy." Broom v. Cont'l Cas. Co., 152 N.H. 749, 753, 887 A.2d 1128, 1131 (2005).  Any doubt or ambiguity in the allegations in the underlying complaint must be resolved in favor of the insured.  Id. at 754.  "The interpretation of the language of an insurance policy, like any contract language, is ultimately an issue for the court to decide."  Merchants Mut. Ins. Co. v. Laighton Homes, LLC, 153 N.H. 485, 487, 889 A.2d 271, 273 (2006).

    USF&G issued four general liability insurance policies covering the period from September 29, 2001 through September 29, 2005.  They were:

1. USF&G policy no. BK00929705 covered the period from September 29, 2001 to September 29, 2002 (the "2001 Policy") (J.A. Ex.3);

2. USF&G policy no: BK01220973 covered the period from September 29, 2002 to September 29, 2003 (the "2002 Policy") (J.A. Ex. 6);

3. USF&G policy no: BK01664189 covered the period from September 29, 2003 to September 29, 2004 (the "2003 Policy") (J.A. Ex. 9); and

4. USF&G policy no: BK01664189 covered the period from September 29, 2004 to September 29, 2005 (the "2004 Policy") (J.A. Ex. 13).

Each policy insured against damages which occurred only during the policy period.  The damages Hitchiner alleges occurred after the failure of the system in November of 2004.  The only relevant

policy, if any, therefore, is the policy in effect in 2004. That policy was USF&G policy no. BK01664189, which was modified effective September 29, 2004. <u>See</u> J.A. Ex. 9 and Ex. 13.

Liability arising out of professional services is specifically excluded from the USF&G policy as follows:

> This insurance does not apply to ... [b]odily injury,' 'property damage,' personal injury,' or 'advertising injury' due to rendering or failure to render any professional service by or on behalf of any insured.

J.A. Ex. 9, 13 USF&G 10478, 10482. "Professional service" included, among other things:

> (1) ...consulting or architectural services; (2) *Preparing, approving, or failing to prepare or approve* maps, drawings, *opinions, reports,* surveys, change orders, *designs or specifications;* (3) Supervisory, claim, investigation, adjustment, appraisal, survey, audit, *inspection or engineering services*[.]

<u>Id.</u>

The exclusionary language is clear and unambiguous, <u>see</u> <u>MacMillin Co., Inc. v. Aetan Cas. and Sur. Co.</u>, 135 NH 189, 191-92, 601 A.2d 169, 171 (1991), and unequivocally precludes coverage for those Hitchiner Counterclaims which allege, in pertinent part, that Windham was "the party responsible for developing, [and] testing ... the sequestration agent." J.A. Ex. 19, 133-34 (emphasis added). Windham has not and cannot argue that this exclusion does not exclude all coverage for its

8

professional services.

Instead, Windham relies on the "Products-Completed Operations" coverage, which provides coverage for:

> ...all...'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work'.

J.A. Ex. 9 at USF&G 0010497.  Windham asserts that Hitchiner's damages from the deficiencies in the testing, application and operation of its sequestering agent and the sequestering agent 'itself' are covered as Windham's 'work' and 'product'.[4]  USF&G denies the applicability of this coverage to the claim and relies on a number of coverage exclusions.  USF&G also requests further discovery under Fed. R. Civ. P. 56(f), because the affidavit of Brad Horn, Windham's founder and vice president, raises facts not set forth in Windham's answer to the interrogatories.  Since I find that the exclusions preclude coverage, it is not necessary to stay the motion to permit Rule 56(f) discovery.

The language in the arbitration claim, -- "the amount of money paid for Windham's work which was not performed properly prior to the remedial system failure," J.A. Ex. 19, ¶ 140 --

---

[4] Windham also throws in a catch-all attempt to incorporate by reference Mactec's motion for summary judgment. LR 7.1, however, prohibits combining multiple motions in a single motion.

suggests strongly that Windham's work on the job had not been completed at the time the system failed.  Work which is not completed and which was not put to use in treating wastewater is not covered by the "Product-Completed Operations Hazard."

Furthermore, any damage to the real property (e.g., "fouling the aquifer, clogged aquifer formation") is excluded by the exclusion in Section 1, A, 2, Mm (5). See J.A. Ex. 9 at USF&G 0010482.[5]  Damage to Windham's own work is excluded by the "Damage to 'Your Work' Exclusion" clause J.A. Ex. 9 at USF&G 0010483.  The allegations that neither the system nor any part of it could be used, or that it was less useful because it incorporated Windham's product, e.g. the fouled well, is property damage to impaired property, which falls directly within the property damage exclusion. See J.A. Ex. 9 at USF&G 0010483.  Damage to "impaired property" because of a failure to perform the contract in accordance with its terms is also excluded. See J.A. Ex. 9 at USF&G 0010483.

The last "business risk" exclusion provides that insurance coverage does not apply to:

---

[5] Section 1.A.2.m(6) does not apply to property damage covered by Product-Completed Operations Hazard. J.A. Ex. 9, USF&G 0010483.

> [d]amages claimed for any loss, cost or expense incurred by
> others for the loss of use ... inspection, repair,
> replacement ... of (1)'your product'; (2) 'your work', or
> (3) 'Impaired property' if such product is withdrawn ...
> from use ... because of a known ... defect.

J.A. Ex. 9 at USF&G 0010483.  Again, the damages because of impairment of property are excluded.  Taken together the professional services exclusion, together with the business exclusions, completely preclude coverage of the counterclaims against Windham.

Windham's motion (Document no. 45) is denied and USF&G's motion (Document no. 42) is granted.

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge

Date: September 29, 2008

cc:   Daniel P. Luker
      Steven A. Solomon
      John Wolkowski
      Jeffrey T. Edwards
      Roy T. Pierce
      Joshua E. Menard
      Russell F. Hilliard
      Christopher R. Blazajewski
      Eric B. Hermanson