UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Windham Environmental
Corporation, et al.

    v.                                          Civil No. 06-cv-367-JM

United States Fidelity
and Guaranty Company


**O R D E R**

Mactec Engineering & Consulting, Inc. ("Mactec") moves for partial summary judgment seeking a determination that United States Fidelity and Guaranty Company ("USF&G") must defend arbitration claims against it (Document no. 46). USF&G moves for summary judgment as to any duty to defend and as to any duty to indemnify (Document no. 43).[1]

**Standard of Review**

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

---

[1] In a separate order the court will consider cross motions for summary judgment between USF&G and Windham.

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A genuine issue is one "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  A material fact is one "that might affect the outcome of the suit."  Id. at 248.

In ruling on a motion for summary judgment, the court construes the evidence in the light most favorable to the nonmovant.  See Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001).  The party moving for summary judgment "bears the initial responsibility of . . . identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the burden shifts to the nonmovant to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996) (citing Celotex, 477 U.S. at 323; Anderson, 477 U.S. at 249).  Neither conclusory allegations, improbable inferences, nor unsupported speculation

is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A genuine issue is one "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  A material fact is one "that might affect the outcome of the suit."  Id. at 248.

In ruling on a motion for summary judgment, the court construes the evidence in the light most favorable to the nonmovant.  See Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001).  The party moving for summary judgment "bears the initial responsibility of . . . identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the burden shifts to the nonmovant to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted."  Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996) (citing Celotex, 477 U.S. at 323; Anderson, 477 U.S. at 249).  Neither conclusory allegations, improbable inferences, nor unsupported speculation

are sufficient to defeat summary judgment.  <u>Carroll v. Xerox Corp.</u>, 294 F.3d 231, 236-37 (1st Cir. 2002).

When parties file cross-motions for summary judgment, ordinarily the court must consider the motions separately to determine whether summary judgment may be entered under the Rule 56 standard.  <u>Pac. Ins. Co., Ltd. v. Eaton Vance Mgmt.</u>, 369 F.3d 584, 588 (1st Cir. 2004); <u>Bienkowski v. Northeastern Univ.</u>, 285 F.3d 138, 140 (1st Cir. 2002).  When, in a non-jury case, cross motions for summary judgment are filed on stipulated or materially undisputed facts, the case is deemed submitted and the court determines any inferences to be drawn from those facts. <u>See Garcia-Ayala v. Lederle Parenterals, Inc.</u>, 212 F.3d 638, 643-44 (1st Cir. 2000).

In this case, the parties submitted a Joint Statement of Agreed Facts ("J.A.").  That stipulation authenticates the twenty-nine (29) documents filed under seal as true and correct copies of those documents. In addition, in compliance with LR 7.2, USF&G provided a Statement of Material Facts (Document no. 43-1 pp. 3-9).  Mactec's objection to USF&G's motion for summary judgment (Document no. 50), and its own motion for summary judgment (Document no. 46), provide no opposition to USF&G's

Statement of Material Facts.  Therefore, "[a]ll properly supported facts set forth in ...[USF&G's] factual statement shall be deemed admitted." LR 7.2 (G)(2). Finally, Mactec filed its own "Additional Statement of Material Facts to Which There is No Genuine Issue" (Document no. 50-2).  USF&G, however, has disputed all or parts of 29 of the 34 facts (Document no. 55).

### Background

Mactec is an engineering firm which, through its predecessor, entered into a contract with the Hitchiner parties to design, engineer and install a ground water remediation system at the Savage Well Site in Milford, New Hampshire.  Mactec subcontracted part of that work in 2002 to the predecessor of Windham Environmental Corporation ("Windham").  Windham was to analyze the chemical composition of the contaminated ground water and develop, test and apply a sequestration agent to prevent iron fouling of the system's injection wells.

The subcontract between Mactec and Windham specifically provided:

> 11.1    Without in any way limiting Subcontractor's liability hereunder, Subcontractor shall procure and keep in effect the insurance listed below in Paragraph 11.2.  As soon as possible after the execution of this Agreement, but in no event later than fifteen days thereafter, Subcontractor *shall furnish [Mactec] with Certificates of*

4

>    *Insurance* attested to by a duly authorized representative of
>    the insurance carrier(s) evidencing that the insurance
>    required hereunder is in effect and that such insurance will
>    not be cancelled or materially changed without giving to
>    [Mactec] at least thirty (30) days prior written notice.
>    Subcontractor shall ensure that [Mactec] and their
>    respective officers, agents, and employees are 'additional
>    insureds' on all such policies.  *Subcontractor shall provide
>    [Mactec] copies of certificates of insurance a minimum of
>    fifteen (15) days prior to each anniversary of the effective
>    date of the CD.*

J.A. Ex.4, USF&G 0508 (emphasis added).  Paragraph 11.2 provided that the insurance must include a General Liability policy.  Id., USF&G 0507.

The 2001–2002 USF&G general liability policy provided, in relevant part:

>    If (a) you are required to add another person or
>    organization as an insured under the policy in a written
>    construction contract or agreement which is in effect during
>    the period of this policy; and (b) *a certificate of
>    insurance has been issued listing that person as an
>    ADDITIONAL INSURED,* then [the Policy] is amended to include
>    that person or organization as an insured (referred to below
>    as an ADDITIONAL INSURED).

See J.A. Ex. 3 [2001–02 Policy], USF&G 10126.  Upon Windham's request, USF&G provided a Certificate of Insurance to Mactec with respect to the 2001–2002 policies indicating that it had been added as an Additional Insured on those policies.

Mactec has not produced a Certificate of Insurance for any

subsequent annual policy. It argues instead that Certificates for subsequent years are unnecessary. Each subsequent policy, however, contained the identical "Additional Insured" language quoted above from the 2001-2002 policy. <u>See</u> J.A. 9, USF&G 10525.

On October 25, 2004, the remediation system was started up, and then failed to operate properly for the contractually-required thirty-day (30) period. Of particular significance, Hitchiner, in its claim, alleged that the sequestering agent was defective and insufficient, and that it crystallized and caused significant iron fouling of both the injection wells and the surrounding aquifer.

## **Discussion**

Mactec has the burden of showing property damage caused by an occurrence during a policy period. While it makes some generalized arguments that the property damage could have occurred in any or all policy period(s) from 2002 through 2004, no fair reading of Hitchiner's counter claim supports the arguments. Assuming <u>arguendo</u> that there was in fact an "occurrence" under the policy, it was the "catastrophic failure

of the system in November 2004." J.A. 19, ¶23, USF&G 0459.[2]  It is the 2003-2004 policy, then, that is at issue.  As to that policy, no Certificate of Insurance was issued to Mactec.

Mactec argues that it is an "Additional Insured" for each subsequent policy, including the 2003-2004 policy, even though it received no Certificate of Insurance for that policy.  First, it argues that it falls into a class of entities for which such coverage was available.  It is clear that it does fall into the eligible class; however, the fact that it is the type of entity which was eligible to become an "Additional Insured" does not automatically make it an "Additional Insured."  Plaintiff does not point to any language in any policy that provides for such automatic coverage --  because there is no such language.

Instead, plaintiff argues that Windham was insured by USF&G continuously from 1995 through 2005 and that the policies were extremely similar.  The policies were automatically renewed in some instances, but not in all instances.  See J.A. Ex. 2 and 8.  The language of the different policies was similar. This means, of course, that each year the general liability policy had a

---

[2] Because I resolve the case on other grounds, it is unnecessary to determine whether plaintiff is entitled to a partial summary judgment finding of an "occurrence."

7

provision that said that an "Additional Insured" is one for whom "a certificate of insurance has been issued listing that person or organization as an insured.. . ."  That does not help plaintiff's argument.  Instead, Windham's repeated failure to comply with the provision requiring Mactec to be named as an Additional Insured on a Certificate of Insurance undermines Mactec's claim that they were intended to be covered by the policy.

The plaintiff argues that the broker, Poole, did not automatically reissue Certificates of Insurance when the policies were reviewed.  Poole did have the authority to issue such certificates and did not notify USF&G when it did issue them.  Plaintiff argues that new certificates were not required, but cites no factual basis for that position.  Plaintiff also argues that the certificates served no underwriting purpose, and they do not themselves provide insurance.  Plaintiff's argument may have a degree of logic but it is not supported by any citations – nor have I found any case law to support it.

There is authority, however, for USF&G's position.  Under New Hampshire law an insurance contract is to be construed like any contract.  See Hudson v. Farm Family Mut. Ins. Co., 142 N.H.

8

144, 146, 697 A.2d 501, 503 (1997). In construing a policy the court

> take(s) the plain and ordinary meaning
> of the policy's words in context, and
> we construe the terms of the policy as
> would a reasonable person in the position
> of the insured based on more than a
> casual reading of the policy as a whole.

High Country Assoc. v. N.H. Ins. Co., 139 N.H. 39, 41, 648 A.2d 474, 476 (1994). Here there is no ambiguity and, in fact, no argument about the policy language. The policy in each year from 2001 through 2004 clearly provides that "[i]f ... a certificate of insurance has been issued listing that person as an ADDITIONAL INSURED, then [the policy] is amended to include that person or organization as an insured." New Hampshire law requires that "[a]ll parts of an insurance agreement are to be given effect whenever reasonably possible." Commercial Union Assur. v. Gallan, 118 N.H. 744, 747, 394 A.2d 839, 842 (1978). The court cannot ignore the clear language in this policy. See id.

Furthermore, in the absence of an ambiguity, the parol evidence rule prohibits resort to plaintiff's extrinsic evidence. Even if I were to consider it, plaintiff could not prevail. Poole was not an agent of USF&G, but rather a broker placing insurance for its client, Windham. J.A. 29, pp. 19, 37. It was

not authorized to bind USF&G.  Therefore, whatever Poole's practice was in issuing certificates does not overcome the clear policy term, nor does its practice estop USF&G from enforcing the clear language of the policy.  Mactec itself recognized that its subcontractor was required to "provide [it] copies of certificates of insurance a minimum of fifteen (15) days prior to each anniversary of the effective date of the CD."  Mactec failed to enforce that provision and Windham breached its promise.  The failure is between those entities.  Clearly Mactec either knew, or should have known, it needed a new Certificate of Insurance for each policy year.

The applicable policy required the issuance of a Certificate of Insurance as a precondition to coverage.  No certificate was issued under the applicable policy, eliminating or precluding Mactec's claim for coverage.[3]

## Conclusion

Mactec's motion (Document no. 46) is denied.  USF&G's motion (Document no. 43) is granted.  The Clerk is directed to enter judgment for USF&G.

---

[3] Since Mactec is not an additional insured, the issues relating to the policy verified by the parties need not be addressed.

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge

Date: September 29, 2008

cc:    Daniel P. Luker
       Steven A. Solomon
       John Wolkowski
       Jeffrey T. Edwards
       Roy T. Pierce
       Joshua E. Menard
       Russell F. Hilliard
       Christopher R. Blazejewski
       Eric B. Hermanson